**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Victor Krosch and Videll Krosch, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING DEFENDANT** |
| | ) | **JLG INDUSTRIES' AND P-Q** |
| vs. | ) | **CONTROLS' MOTIONS FOR** |
| | ) | **SUMMARY JUDGMENT AND** |
| | ) | **DENYING DEFENDANT DAKOTA-** |
| JLG Industries, Inc., P-Q Controls, | ) | **MONTANA HARDWARE'S MOTION** |
| Inc., and Dakota-Montana Hardware, Inc., | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| | ) | |
| Defendants. | ) | Case No. 1:07-cv-045 |

___

Before the Court are defendant JLG Industries, Inc.'s motion for summary judgment filed on July 16, 2008, defendant P-Q Controls, Inc.'s motion for summary judgment filed on July 16, 2008, and defendant Dakota-Montana Hardware, Inc.'s motion for summary judgment filed on October 3, 2008. See Docket Nos. 23, 27, 43. The Plaintiffs filed responses in opposition to JLG Industries' motion and P-Q Controls' motion on August 18, 2008. See Docket Nos. 33, 36. JLG Industries and P-Q Controls filed reply briefs on August 25, 2008. See Docket Nos. 38, 39. The Plaintiffs filed a response in opposition to Dakota-Montana Hardware's motion on November 12, 2008. See Docket No. 47. For the reasons set forth below, the Court grants JLG Industries' motion for summary judgment, grants P-Q Controls' motion for summary judgment, and denies Dakota-Montana Hardware's motion for summary judgment.

**I.    BACKGROUND**

The plaintiffs, Victor Krosch and Videll Krosch, reside on a ranch near Selfridge, North Dakota. Defendant JLG Industries, Inc., a Pennsylvania corporation, manufactures mobile aerial work platforms (scissors lifts). Defendant P-Q Controls, Inc., a Connecticut corporation, produces and manufactures industrial controls, including level sensors. Defendant Dakota-Montana Hardware, Inc., a Minnesota corporation, was engaged in hardware retail sales and equipment rental through the operation of a True Value retail store located in Bismarck, North Dakota.

On October 17, 2003, the Plaintiffs rented a scissors lift from the True Value store. Before the Plaintiffs rented the scissors lift, they informed True Value employees that they intended to use the lift in its elevated position to paint their barn. The Plaintiffs also informed the True Value employees that the land surrounding the barn was compacted dirt and sloped away from the barn. The True Value employees assured the Plaintiffs that the scissors lift was safe to use for this purpose and would not tip over because it had a wide base.

On October 17, 2003, the Plaintiffs brought the scissors lift home and Victor Krosch moved the lift into a position parallel with the barn. Prior to painting, Victor Krosch intended to measure one of the barn's windows that was approximately twenty-two feet from the ground so that he could make a piece of cardboard to cover the window. Victor Krosch raised the scissors lift to a height at which he was approximately even with the window. It is alleged that the scissors lift tipped over before Victor Krosch was able to measure the window. He suffered serious injuries from the fall. Victor Krosch did not notice an alarm or light (level sensor) indicating that the lift was on a slope or that it was about to tip over.

The Plaintiffs contend that JLG Industries manufactured the scissors lift and that it was equipped with a level sensor manufactured by P-Q Controls. The Plaintiffs contend that the scissors lift was owned by Dakota-Montana Hardware, doing business as True Value, and was offered to the public as rental equipment. On March 3, 2004, counsel for the Plaintiffs sent a letter to Dakota-Montana Hardware's insurance adjuster requesting that the scissors lift be preserved.

On May 28, 2007, the Plaintiffs filed a complaint in North Dakota state court. On June 22, 2007, the action was removed to federal court. The Plaintiffs have brought strict products liability claims against JLG Industries and P-Q Controls, and a negligence claim against each of the Defendants. See Docket No. 1-2.

On August 17, 2007, the Court established April 2, 2008, as the deadline for the parties to disclose expert witnesses. The deadline was later extended to May 9, 2008, for the Plaintiffs and June 9, 2008, for the Defendants. On June 9, 2008, counsel for Dakota-Montana Hardware informed the Plaintiffs that the scissors lift had been sold to an unidentified third party and efforts to locate the lift were unsuccessful. The scissors lift has never been located or inspected. On November 14, 2008, the Plaintiffs filed a motion for an extension of time "to disclose additional experts in light of the Defendant Montana-Dakota's disclosure that the scissor lift has been lost," to perform discovery, and to file a motion regarding spoliation. See Docket No. 48.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and, therefore, the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654

3

(8th Cir. 2007); see Fed. R. Civ. P. 56(c).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  Id.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law.  Diesel Machinery, Inc. v. B.R. Lee Industries, Inc., 418 F.3d 820, 832 (8th Cir. 2005).  The moving party first has the burden of demonstrating an absence of genuine issues of material fact.  Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005).  The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

### III.    LEGAL DISCUSSION

This action is based on diversity jurisdiction.  Therefore, the Court will apply the substantive law of North Dakota.  See Paracelsus Healthcare Corp. v. Philips Med. Sys., 384 F.3d 492, 495 (8th Cir. 2004).

The Plaintiffs have brought strict products liability claims against JLG Industries and P-Q Controls, and a negligence claim against each of the Defendants.  The North Dakota Supreme Court has "recognized that negligence and strict liability in tort are separate and distinct theories of products liability and that each theory has a different focus."  Oanes v. Westgo, Inc., 476 N.W.2d 248, 253 (N.D. 1991).  The doctrine of strict liability imposes liability on the manufacturer or seller, or both, for a defective condition unreasonably dangerous to a consumer or for a failure to provide

4

an adequate and proper warning. Day v. Gen. Motors Corp., 345 N.W.2d 349, 352 (N.D. 1984). Strict liability focuses on whether a product is defective and unreasonably dangerous, whereas negligence focuses on whether the manufacturer's or seller's conduct fell below the standard of reasonable care. The essential difference between the two theories is that in negligence claims "the foreseeability of harm by the manufacturer or seller is a question of fact for the jury while in strict liability knowledge of the product's propensity to inflict harm is assumed regardless of whether the danger was foreseeable by the manufacturer or seller." Oanes, 476 N.W.2d at 253.

### A.     STRICT LIABILITY

The North Dakota Supreme Court has described the necessary elements for a strict products liability claim as follows:

> In order to recover for injuries sustained as a result of a defective condition in a product, unreasonably dangerous to a consumer, the plaintiff must show by a preponderance of the evidence the product was defective in design or manufacture; the defect rendered the product unreasonably dangerous to the consumer; the defect existed when the product left the manufacturer; and the defect was a proximate cause of the plaintiff's injuries.

Endresen v. Scheels Hardware and Sports Shop, Inc., 560 N.W.2d 225, 229 (N.D. 1997). The North Dakota Century Code defines a defective product as follows:

> No product may be considered to have a defect or to be in a defective condition, unless at the time the product was sold by the manufacturer or other initial seller, there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer.

N.D.C.C. § 28-01.3-06. Section 28-01.3-01(4) of the North Dakota Century Code defines "unreasonably dangerous" to mean "that the product is dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer, or user of that product in that

community considering the product's characteristics, propensities, risks, dangers, and uses, together with any actual knowledge, training, or experience possessed by that particular buyer, user, or consumer."  The Plaintiffs contend that JLG Industries is strictly liable for the design and manufacture of the scissors lift, and that P-Q Controls is strictly liable for the design and manufacture of the level sensor that was attached to the scissors lift.

Under North Dakota law, "a plaintiff cannot prevail simply by proving a product's defect and causation of the injury which the plaintiff suffered." Reagan v. Hi-Speed Checkweigher Co., 30 F.3d 947, 948 (8th Cir. 1994) (citing Kaufman v. Meditec, Inc., 353 N.W.2d 297, 301 (N.D. 1984)). The plaintiff must also prove that the product was unreasonably dangerous based on its condition at the time it left the manufacturer or seller.  "The mere fact that an accident or incident occurred, standing alone, does not support a claim that a product was defective." Burgad v. Jack L. Marcus, Inc., 345 F. Supp. 2d 1036, 1041 (D.N.D. 2004).  "As a general rule, a plaintiff is required to prove a product defect through an expert witness." Id.

The Plaintiffs also allege that JLG Industries and P-Q Controls are strictly liable for a failure to provide adequate warning of the dangers associated with their respective products.  "In a strict liability failure-to-warn case, the focus is on whether the warnings, if any, which accompany a product are adequate so that the product is not unreasonably dangerous to the ordinary user. The focus is not on the knowledge or reasonableness of the conduct of the manufacturer or seller." Oanes, 476 N.W.2d at 253.

### 1. **JLG INDUSTRIES**

JLG Industries contends that it is entitled to summary judgment because the scissors lift is unavailable for the demonstration of any alleged defects <u>and</u> because the Plaintiffs have failed to disclose any expert witnesses to support their strict liability claims. JLG Industries contends that expert witness testimony is required to support the Plaintiffs' claim because it involves complex, technical issues that go far beyond the common knowledge and experience of jurors. In essence, JLG Industries contends that the Plaintiffs' claims must fail because they have no witnesses qualified to address the adequacy or inadequacy of the design, manufacture, warning, or instruction of the scissors lift.

The Plaintiffs assert that expert witness testimony is not needed to support the strict products liability claims against JLG Industries. The Plaintiffs argue that the True Value employees who assisted the Plaintiffs have testified that the scissors lift should not have elevated had it been on an uneven surface. The Plaintiffs contend that the lift continued to elevate despite being on sloped ground by the barn which is sufficient to support the allegation that the scissors lift was defective.

The Court finds that the Plaintiffs have failed to present any evidence that the scissors lift was defective in design or manufacture, that any such defect rendered the scissors lift unreasonably dangerous, or that the defect existed when the scissors lift left JLG Industries. "In the absence of any expert testimony to establish the critical elements of a strict liability claim, the claim must fail." <u>Burgad</u>, 345 F. Supp. 2d at 1042. Not only is there a lack of expert witness testimony to establish the Plaintiffs' claims against JLG Industries, but the entire record is devoid of any competent evidence that would lead a finder of fact to find strict liability against JLG Industries.

The Plaintiffs' strict products liability failure-to-warn claim also suffers, and ultimately fails, due to a lack of evidence to support such a claim. The Plaintiffs have failed to offer any proof or present any evidence of what made the warnings on the scissors lift, if any, inadequate so that the lift was unreasonably dangerous to the ordinary user. With no evidence and no expert witness testimony to support the Plaintiffs' claim that the warnings on the lift made it unreasonably dangerous, JLG Industries cannot be held strictly liable on a failure-to-warn claim.

The deadline for the Plaintiffs to designate and disclose expert witnesses as to the fault of JLG Industries expired on May 9, 2008, and no good reason exists for another extension of the deadline. Because the scissors lift cannot be located and inspected, and because the Plaintiffs have failed to designate any expert witnesses against JLG Industries, they lack the evidence necessary to support the strict products liability claims against JLG Industries. The Plaintiffs cannot, without expert witness testimony, establish that the scissors lift was defective in design or manufacture; that any such defect rendered the lift unreasonably dangerous to the user or consumer; that the defect existed when the lift left the manufacturer; or that the defect was a proximate cause of the Plaintiffs' injuries. Nor in the absence of expert witness testimony can the Plaintiffs show that the warnings, if any, were inadequate to establish the elements of a strict liability claim. Therefore, summary judgment as a matter of law is warranted in favor of defendant JLG Industries.

### 2.   **P-Q CONTROLS**

P-Q Controls argues that it is also entitled to summary judgment because the Plaintiffs cannot establish that the scissors lift's level sensor was manufactured by P-Q Controls due to the fact that the scissors lift has never been recovered. P-Q Controls further argues that even if the level sensor

had been manufactured by P-Q Controls, the Plaintiffs have not established that the level sensor was defective or unreasonably dangerous, that the defect existed at the time it left P-Q Controls, or that the defect was the proximate cause of Victor Krosch's injuries.

The Plaintiffs contend that expert witness testimony is not needed to support its strict products liability claims against P-Q Controls. The Plaintiffs argue that the True Value employees who assisted the Plaintiffs have testified that the level sensor should have sounded an alarm had the scissors lift been on an uneven surface. The Plaintiffs contend that neither an alarm nor light activated when Victor Krosch used the scissors lift which is sufficient to support the allegation that the level sensor was defective.

As with the Plaintiffs' strict products liability claims against JLG Industries, the Plaintiffs have failed to present any evidence that the level sensor was defective in design or manufacture, that any such defect rendered the product unreasonably dangerous, or that the defect existed when the level sensor left P-Q Controls. Further, there is no evidence in the record to establish that the level sensor was the proximate cause of Victor Krosch's injuries. The Plaintiffs have failed to present any expert witness testimony to prove that there was a defect in the level sensor. More important, the Plaintiffs have failed to show that P-Q Controls designed and manufactured the level sensor, let alone that it did so in a defective manner.

The lack of expert witness testimony is not the sole reason the Plaintiffs' claim is doomed because the record is devoid of any competent evidence that would lead a finder of fact to find strict liability against P-Q Controls. The Plaintiffs rely solely on the deposition testimony of two True Value employees to support their strict products liability claim against P-Q Controls which is insufficient to sustain the burden of proof or to create a factual dispute against the manufacturer. The

9

Plaintiffs cannot, without expert testimony, establish that the level sensor was defective in design or manufacture; that any such defect rendered the product unreasonably dangerous to the user or consumer; that the defect existed when the level sensor left the manufacturer; or that the defect was a proximate cause of the Plaintiffs' injuries.

The Plaintiffs' strict products liability failure-to-warn claim against P-Q Controls also fails due to a lack of credible evidence to support such a claim. The Plaintiffs have failed to present evidence of the warnings that were located on the level sensor or evidence of what made the warnings inadequate so that the level sensor was unreasonably dangerous to the ordinary consumer. With no evidence and no expert witness testimony to support the Plaintiffs' claim that the warnings on the level sensor made it unreasonably dangerous, P-Q Controls cannot be held strictly liable on a failure-to-warn claim.

The deadline for the Plaintiffs to designate and disclose expert witnesses as to the fault of P-Q Controls expired on May 9, 2008, and no good reason exists for an extension of the deadline. Because the scissors lift with a level sensor cannot be located and inspected, and because the Plaintiffs failed to designate any expert witnesses against P-Q Controls, they lack sufficient evidence necessary to support a strict products liability claim against P-Q Controls. Summary judgment as a matter of law is warranted in favor of P-Q Controls on the failure-to-warn claim.

### B.    NEGLIGENCE

In a negligence action in North Dakota, "the plaintiff has the burden of demonstrating (1) a duty, (2) breach of that duty, (3) causation, and (4) damages." Investors Real Estate Trust Properties, Inc. v. Terra Pacific Midwest, Inc., 686 N.W.2d 140, 144 (N.D. 2004). Although the Plaintiffs have

asserted a number of negligence claims against the Defendants, the negligence claims are essentially based on theories of negligent design and negligent failure-to-warn as to JLG Industries and P-Q Controls, and negligent failure-to-warn as to Dakota-Montana Hardware.

In a negligent design claim, the manufacturer or seller is not liable without proof that the product is defective. Oanes, 476 N.W.2d at 253. Therefore, one element of a negligent design claim is that the product is defective or unsafe. A plaintiff must establish that a defendant failed to use reasonable care in designing a product and that this failure resulted in a defective product.

The North Dakota Supreme Court has recognized a negligent failure-to-warn cause of action and has cited the principles set forth in Section 388 of the Restatement Second of Torts (1965), as summarizing the elements for negligent failure-to-warn. Collette v. Clausen, 667 N.W.2d 617, 624 (N.D. 2003). Section 388 provides that:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

By applying the principles of the Restatement, the North Dakota Supreme Court was clarifying existing negligence principles within the context of failure-to-warn. Collette, 667 N.W.2d at 624.

**1.      JLG INDUSTRIES**

JLG Industries argues that the Plaintiffs cannot prove their claims of negligence without expert witness testimony and that it "is unclear how Plaintiffs could even address the applicable standard of care, let alone any alleged breach thereof." See Docket No. 24. The Plaintiffs contend that evidence exists, without the need for expert witness testimony, that directly supports the claim that JLG Industries failed to meet its duty to provide a safe machine and to warn of the danger of tipping.

The Court finds that the Plaintiffs' negligence claims against the manufacturer, JLG Industries, meet the same fate as the strict products liability claims. Under both theories of negligence brought by the Plaintiffs, they are required to prove duty, a breach of duty, causation, and damages. The Plaintiffs have not presented any credible evidence, nor any expert witness testimony, that addresses the issues of duty, breach of duty, or causation as to JLG Industries. The deposition testimony of the True Value employees is not sufficient, as a matter of law, to establish the negligent design and manufacture of the scissors lift and the fact that the warnings were inadequate on the part of the manufacturer. Without the scissors lift or any warnings that may have been attached to the lift, and without any credible expert witness testimony to present against JLG Industries, the Plaintiffs are unable, as a matter of law, to support their claims of negligence against the manufacturer of the scissors lift. It is undisputed that no witness has stated that JLG Industries breached any standard of care, failed to exercise reasonable care in the design and manufacture of the scissors lift, or that the lift was unreasonably dangerous. There are no genuine issues of material fact which exist as to the fault of JLG Industries and summary judgment is warranted on the negligence claims.

### 2. P-Q CONTROLS

P-Q Controls argues that expert witness testimony is required to establish the claims of negligence. Further, P-Q Controls argues that the Plaintiffs have never even shown that the level sensor was manufactured by P-Q Controls and, even if it was, the Plaintiffs have not produced any evidence to support the negligence claim against the manufacturer of the level sensor.

The Plaintiffs contend that there is sufficient evidence to support the claims of negligence against P-Q Controls, yet the only evidence provided was the testimony of the True Value employees. As previously noted, that testimony alone does not, as a matter of law, establish a duty, breach of duty, evidence of the negligent design and manufacture of the level sensor, nor causation as to P-Q Controls. Of importance is the fact that the Plaintiffs have failed to prove that P-Q Controls was the manufacturer of the level sensor. It follows that without this proof, claims alleging that P-Q Controls negligently designed the level sensor and negligently failed to warn of its danger are without merit and fail as a matter of law. There are no genuine issues of material fact which exist as to the fault of defendant P-Q Controls and summary judgment is warranted.

### 3. DAKOTA-MONTANA HARDWARE

Dakota-Montana Hardware contends that it did not owe a duty to, or breach any duty to, the Plaintiffs in leasing them the scissors lift in October 2003. Dakota-Montana Hardware further contends that the scissors lift was appropriate for the specified purposes, namely, use on flat ground; that Dakota-Montana Hardware did not owe a duty to Victor Krosch because he did not sign the lease and was therefore a prohibited user; and that the rental agreement signed by Videll Krosch included

clauses which agreed to hold Dakota-Montana Hardware harmless, to indemnify it for any liability, and to waive claims for personal injury and other damages.

The Plaintiffs argue that Dakota-Montana Hardware negligently failed to accurately communicate information about the stability, safety features, and suitability of the scissors lift for painting a barn which resulted in Victor Krosch's use of the scissors lift and his subsequent injuries when the lift tipped over. The Plaintiffs allege that Dakota-Montana Hardware negligently failed to warn the Plaintiffs that the scissors lift should not have been used on dirt, that the lift would not stop elevating if it was on uneven ground, and that the lift would not warn the operator that it was on uneven ground by an alarm or light. The Plaintiffs also contend that the rental agreement provisions that limit Dakota-Montana Hardware's liability are unconscionable.

The Plaintiffs seek to investigate whether Dakota-Montana Hardware engaged in spoliation by selling the scissors lift before the Plaintiffs ever had a chance to inspect the lift and the level sensor for purposes of this lawsuit. The North Dakota Supreme Court has determined that summary judgment may be an appropriate sanction when there has been spoliation of evidence. <u>Bachmeier v. Wallwork Truck Centers</u>, 544 N.W.2d 122, 126 (N.D. 1996). The request by the Plaintiffs to extend discovery and the motion deadlines because the scissors lift was sold is justifiable as to Dakota-Montana Hardware. However, there is no factual or legal basis to do so as to JLG Industries or P-Q Controls because neither was responsible for the disposal of the scissors lift. Until the issue of spoliation has been briefed by the remaining parties to this lawsuit and ultimately resolved by the Court, a decision on Dakota-Montana Hardware's summary judgment motion would be premature. Therefore, the Court finds that at this stage of the proceedings, there are genuine issues of material

fact to be resolved as to the fault of defendant Dakota-Montana Hardware and that summary judgment is not appropriate under the circumstances.

## IV.     CONCLUSION

For the reasons set forth above, the Court **GRANTS** JLG Industries' motion for summary judgment (Docket No. 23), **GRANTS** P-Q Controls' motion for summary judgment (Docket No. 27), and **DENIES** Dakota-Montana Hardware's motion for summary judgment (Docket No. 43).

The deadline for the Plaintiffs to designate and disclose expert witnesses against the manufacturers of the scissors lift and the level sensor, defendants JLG Industries and P-Q Controls, expired on May 9, 2008.  No good reason exists to extend the deadline against these defendants.  The failure to designate any expert witnesses against the manufacturers, combined with the fact that the scissors lift can no longer be located and inspected, warrants a dismissal of all claims against defendants JLG Industries and P-Q Controls.  Without expert witness testimony, the Plaintiffs cannot establish (1) a defect in design or manufacture, (2) that any such defect rendered the products unreasonably dangerous, (3) the existence of the defect when the products left the hands of the manufacturers, (4) the inadequacy of any warnings, (5) duty, (6) breach of duty, or (7) causation.  No genuine issues of material fact exist as to the fault of either JLG Industries or P-Q Controls.  Summary judgment as a matter of law is warranted as to these defendants.

As to Dakota-Montana Hardware, the Court finds that there are genuine issues of material fact which exist as to the various claims asserted by the Plaintiffs against the retail store (True Value) which leased the scissors lift to the Plaintiffs in October 2003.  The status of Dakota-Montana Hardware is different than that of a manufacturer.  The Plaintiffs' claims are also complicated by the

spoliation issue, i.e., the sale of the scissors lift by the insurer for Dakota-Montana Hardware in the midst of this litigation. This is a critical issue that needs to be addressed and resolved before trial. The Court believes that the Plaintiffs and Dakota-Montana Hardware should be afforded the opportunity to conduct some limited discovery on the subject of spoliation and new deadlines established for the completion of discovery and the filing of pretrial motions. As a result, the trial currently scheduled for January 20, 2009, will be **CANCELLED**. Revised discovery and pretrial deadlines and a new trial date shall be established by Magistrate Judge Miller following a scheduling conference with counsel.

    **IT IS SO ORDERED**.

    Dated this 19th day of December, 2008.

                                          */s/ Daniel L. Hovland*
                                          Daniel L. Hovland, Chief Judge
                                          United States District Court